May it please the Court, I'm Kelly Woodruff of Ferrella, Braun & Martel for Appellant Gary Bernard Moore. I would like to reserve two minutes for rebuttal. Mr. Moore is entitled to a new trial of his severe police brutality case because the District Court made three fundamental and prejudicial errors. First, the District Court abused its discretion by admitting a stale, remote, non-probative prior conviction in Mr. Moore's trial and that error was not harmless. Second, an overarching error that the Court made was allowing Mr. Moore's trial counsel to withdraw two weeks before a jury trial in this case, which then had the effect of permeating the entire trial. And third, the District Court gave confusing, misleading, and inaccurate jury instructions. With regard to the prior conviction, there is really no genuine dispute in this case that the District Court abused its discretion in admitting this prior conviction. The defendants bore the burden of proving that the prior conviction was admissible for impeachment purposes, and they bore the burden of proving that the conviction was within the 10-year bright-line limitation of Federal Rule 609A. The defendants failed in both regards. The District Court was confused and misapplied the law and was unsure whether or not she had the power or the authority to include the parole revocation that the defense had advised her of with no evidence of in determining whether or not his prior conviction, Mr. Moore's prior conviction, came within the 10 years. It did not. The law is clear that you cannot count a parole revocation. The Wallace case says that, and she misinterpreted the law. Because of that fundamental error of law, the District Court was unable to do so. And so the court is not going to be able to do that.  value, which is a discretionary decision, which it wouldn't have been if it was within the 10 years. It still would have been a discretionary decision, Your Honor, under the modified Rule 609A. The court would still have to balance prejudice versus probative value under Rule 403. Rule 609 was amended in 1990 to allow, to require, excuse me, the court to determine whether or not Rule 403 provides that the prejudicial value from the prior conviction substantially outweighed its probative value. And that is basically the analysis that Judge Chesney applied in this case. However, it is undisputed that this was a prior stale conviction. It was 11 and a half years prior to the time of trial, and 609A did not apply. So that very lenient balancing which the judge applied does not apply in this case. The judge was required to conduct the much more stringent balancing that requires the defendants to prove and establish that the probative value of this prior conviction so substantially outweighed its prejudicial effect that it should be admitted for impeachment purposes. Sotomayor, did she ever use that language at all when she was explaining her decision? She did. As she was wandering back and forth between whether or not this fell under 609A or 609B, she did use the correct terms for 609B and said, I suppose if it doesn't come within the 10-year period, then I have to find that the probative value outweighs its prejudicial effect in a substantial way. She did use those terms. However, she did not go through and conduct the analysis, nor did defendants offer her, truly, not the judge's fault. The defendants offered her no basis to make that finding and conduct what the courts require, specific facts and circumstances, to allow such a stale conviction to come in. This, the Court here, because of the fact that this is where I have a problem. The premise of 609 has to be that the felony convictions that don't have directly to do with truth still have a probative effect on whether the person is telling the truth. And then you get to the 10-year rule, and some of the cases seem to suggest, and I think, Kathy, you're arguing, that if it's not a crime that's directly related to truth-telling, like fraud or something like that, that it ought not to be used after the 10 years. But the premise of the statute has to be that it is relevant, and it's sort of a schizophrenic rule to begin with. Well, I don't disagree with that, Judge Gerson. I do believe that it's a bright-line rule, and that the Congress and the advisory committee found in adopting this rule that after 10 years, the probative value of a conviction for to have any probative value about this particular witness's ability to testify truthfully at trial is almost nil. It's almost nonexistent. And so that is why Congress says, and the advisory committee notes are very clear, that it must be extremely rare and exceptional circumstances. They use that word, exceptional circumstances, to allow such a stale conviction because the probative value is very, very nil. So the Simpson v. Thomas case is directly, directly on point. Despite what the defense counsel says, it is exactly on point. In that case, the trial judge, as our trial judge did, misinterpreted the application of the 10-year rule and included the three-strikes conviction and allowed prior stale convictions to come in. Because the district court there also misinterpreted Rule 609a and b, that court did not exercise its 609b discretion. It only exercised its 609a discretion. The Simpson court found that that was absolutely an abuse of discretion for failing to actually exercise the appropriate discretion, and that it was prejudicial because the Simpson v. Thomas, as you know, was also a Section 1983 police brutality case. And because juries are inclined to view police brutality cases with skepticism anyway, you have somebody there who was a known convicted felon. He was there in his prison garb. The impact of having yet another prior conviction used to impeach him, it added nothing. It said nothing about his credibility. The crime was grand theft. I mean, here we have not the --" it wasn't strictly a he said, she said, because there were four other witnesses to what happened, nonpolice witnesses, first of all. And second of all, he came in and told this somewhat fantastic story, and it's perfectly possible that the jury heard that story, thought it was ridiculous, and didn't believe another word he said, conviction or no conviction. I agree, Your Honor, that there were other factors that the jury could have used to disbelieve him. However, the Ninth Circuit has said that the fact that the defendant's or that the defendant's key issue in the case is not in and of itself grounds for finding probative value. That's the Ben Simon, Ben Simon, Ben Simon case. American Home Insurance also says that. This is sort of running in the other direction. It has to do with the harmlessness of it or harmfulness of it, that his his credibility was obviously very important, but there were many other reasons why he wouldn't be believed. Well, that may be true, Your Honor, but then, again, that goes to then this particular conviction wasn't necessary, and it can't be said. Right. But then why is admission of it not harmless error? I mean, you've done a good job of describing the fact that it wasn't relevant. I mean, he's there in a jumpsuit. He's obviously been in prison. You have other witnesses. Why wasn't it harmless, assuming? I believe, Judge Thomas, I believe that it's not harmless in this case. It was exacerbated by the other error, which was the lack of counsel, so that, for example, Mr. Moore would not have shown up on the first day of trial without civilian clothes had he had counsel to make sure those arrangements were made if he had had counsel to make a proper opening statement where he wasn't displayed as this convicted criminal, you know, in his in his in his garb. The fact that the defense counsel admitted to the judge in arguing for admission of this prior conviction that the reason that the reason that they wanted this conviction was to show the jury that this was not a one-off burglary, that this guy had done this before, that he was a scofflaw, that is why they wanted to, and they succeeded. That is why they got it in. And that is how they portrayed this particular plaintiff throughout the trial. Now, if he had had counsel to represent him at the trial, he would have been able to make appropriate objections, would have been able to have a limiting effect. So, for example, another error that the Court allowed was that the defense counsel against prior orders in limine was allowed to cross-examine Mr. Moore on a prior arrest that had never been notified to anybody, including his counsel, for false impersonation, giving a false name. That he was never charged with that. Those charges were dropped, never arrested. Kagan. But you didn't discuss the 1980s, the main 1983 instruction. Your brief is very vague about it, but when I looked at it, it's a very confusing and strange instruction. I agree, Your Honor. Not the parts about, I mean, you're complaining about things like they had a State action. Well, that's fine. I mean, so what if it's not relevant? But the main instruction, which was sort of doctored together from something that was agreed on earlier and some standard instructions and so on, were that objected to, first of all? Absolutely, Your Honor. It was completely objected to. At this point, recall that Mr. Moore did not have counsel anymore. So at the time he had counsel, his counsel and the defense counsel agreed on instructions that stated the law as it should have been given.  But when Mr. Moore had no counsel, he objected repeatedly that he did not want these instructions given the way that they were given. For whatever reason, the district court decided not to give the two instructions that the parties had agreed on with counsel and gave the defense counsel's proposed instruction, which is, as you noted, very confusing. Well, not really, I mean, partly yes, and partly her own instruction, and actually took out some language in the defense instruction that would have been useful to the plaintiff. I agree. The instruction the only substantive instruction that was given on the excessive force in this case was extremely confusing, very misleading, and required the jury to or advised the jury, instructed the jury that it could make decisions that were not before it. So, for example, the defendants argued, successfully, by the way, that the issue of what happened prior to the time Mr. Moore was in handcuffs was not relevant, so that the police could have beaten him up and held him down to get him into handcuffs. That was not relevant, and that there were no charges being made, because, of course, Judge Jenkins had already granted summary judgment as to that point. However, and I know I'm running out of time here, but the only question that the jury was asked to decide was what happened, what happened factually after Mr. Moore was in handcuffs. Yet the jury instruction required or instructed them that they could decide all sorts of things about whether or not the force was reasonable in getting him into handcuffs, whether or not he was resisting arrest. Judge Jenkins found that as an undisputed fact, as a matter of law, he was not resisting arrest after he was in handcuffs. There was no evidence of that, and Judge Jenkins found that. Yet that was an instruction that was presented to the jury to decide. It was very confusing and did not instruct the jury that if they found that he was beaten up after he was in handcuffs or if they found that, in fact, Officer Hembree had sodomized him, that that would, as a matter of law, be a constitutional violation, which it was. Alito, thank you. Good morning, Your Honors. May it please the Court. Chris Lustig for the appellees, and with me at counsel's table is Noah Blackman, trial counsel for the appellees. Your Honors, the bottom line in this case is that Mr. Moore received a fair trial. With respect to the 1998 attempted grand theft prior, the record's clear that Judge Chesney did know what standards she was supposed to apply, the reverse 403, and she applied it. On page 738 of the excerpts of record, the Court says during the hearing, well, going back to the time frame, it's not an absolute bar that it's an old prior, but the Court would have to find that the probative value substantially outweighs its prejudicial effect. So the defense is starting with the current conviction, if you will. So the Court knew at the beginning of the hearing, before this discussion got underway, what the correct standard was. Did she actually make that finding? Well, Your Honor, she eventually did make several findings with respect to this prior. She noted that this prior was more probative than prejudicial because it dealt with a theft versus drugs or violence, which is a theme that we see in the cases. She noted that it's not just another burglary like the underlying 2002 incident. She noted that- How is that relevant? Well, I think it tends to diffuse the prejudice. I think she pointed out that it's not just another burglary and the jury might think he's just a bad burglar. So she's weighing the probative and the prejudicial aspects of this. She also notes that this is very close to the ten years. It was less than 12 years old. As Your Honor's aware, the defense presented eight priors, going back to 1977 that Mr. Moore had been convicted of. She shows that she is exercising her discretion when she denies the defendant's request with respect to seven out of those eight priors, and just picks the one that's most recent. I'd also point out that there are some- Right, but I think at the end of the day, she didn't make the findings expressly. You'd agree with that? Well, I don't think she said, I'm giving you the reasons why the substantive, why the probative value substantially outweighs the prejudice. But she starts the conversation- Yeah, she said, here's the standard. Here's some things I'm thinking about. And then she doesn't make the findings. That's the way I read the record. Well, I- I mean, isn't that the state of it? Well, I mean, my interpretation, and I think the Court can affirm on any grounds- Did she ever say, I am making the finding that blank? I think the answer to that is no. No, she didn't. So then the question is, does it matter? No.  And there's several considerations that I think the Court should look at. First- I think your problem, then, gets back to our case law, which seems to suggest it might matter or does matter. Yes. What do you make of that? Well, I think there are several reasons why there's no prejudice, even if it is considered an erroneous decision. First, this is a relatively innocuous prior. It is an attempted grand theft from a person. You're not abandoning her. I mean, I just want to know, in light of our case law, if she didn't make the findings, is that of consequence before we get to prejudice? Can you square the lack of findings with our case law? I'm not sure I can, Your Honor. I mean, I understand that if she makes- If there is an error here that is presumed prejudicial, unless we can establish evidence as to why it's more likely to not even have an effect. So your basic argument is she made an implicit finding, and that really ought to be sufficient. Yes. And the Court can affirm on any reasonable grounds. So another consideration that I think is important in this case is the delay of time. The offense that, or the events giving rise to this case happened in 2002. Mr. Moore filed a verified complaint in 2004. Within six years of that prior conviction, he is essentially testifying that these events happened. Now, if the whole premise of Rule of Evidence 609 is that felonies are indicative or probative of a witness's credibility, and that after 10 years, there's kind of like a statute of limitations on how long a prior conviction can affect your credibility, there's no legitimate reason to say that Mr. Moore's credibility on these issues was somehow just cured by the passage of time. He made those allegations that he was testifying to at trial within six years of that prior in a verified complaint. And so the whole premise or rationale for this 10-year rule doesn't apply in this case. And I think that that is a separate independent reason why this Court can look at, this is a rare and exceptional circumstance. Mr. Moore is a rare and exceptional circumstance. And the fact that this case took eight years from the incident to get to trial speaks to that. You were starting to talk about prejudice, and I- Yeah, I'm sorry, Your Honor. And, you know, Mr. Moore's explanation of how he got the 1998 conviction also speaks to the issue of diffusing prejudice. Ordinarily, he probably wouldn't be able to get this information out, but in response to questions from defense counsel about the prior, he pointed out or he got in front of the jury that he had pled no low contendieri to the charge, you know, suggesting that he had less guilt for the crime. He said to the jury that he had pled no low in order to get out of custody because he was offered a deal. He said that he intended to appeal it later and that he had some kind of permission from a judge to do this. And those all went unrebutted by the defense, but that takes out a lot of the prejudice sting out of this prior conviction. He essentially gives an excuse for why he had pled guilty to this rather innocuous charge. I'd also point out that the jury knew he was incarcerated. They knew that he'd been convicted of a burglary because of the underlying offense. The admission did not keep him from testifying. There was a limiting instruction read to the jury about the prior conviction. And finally, the defendants did not emphasize the 1998 prior conviction in their closing argument. All those reasons, for all those reasons, even if it was error to admit the prior, it was harmless error. Are you going to discuss the instruction? Yes, Your Honor. With respect to the ---- I'm not going to say what my problem is with it or some of my problems with it. Okay. I couldn't understand what it meant if I was on a jury. It's – first of all, it says that you must prove by a preponderance of the evidence that the defendant officer used excessive force when they took any of the following actions. So it doesn't say that they used excessive force by taking any of the following actions. It seems to suggest that even if it did all those things, the question is, did they do it with excessive force? And then that is exacerbated or reinforced by the rest of the instruction, which then says that you can only use such force as is objectively reasonable and you must judge the reasonableness of the particular use of force. And then it gives a bunch of characteristics or factors. And it seems to me the jury could think, one of which is, for example, the severity of the crime or other circumstances to which the officers were responding. Now, somebody could think, well, yes, they punched him in the face, but look what he was doing. He was burglaring somebody, so it's okay. It's not excessive. I mean, it's a really confusing instruction. And it was doctored together from a bunch of different diverse things. And I also note that the instruction, as the defense submitted it, had a tagline at the end which said something to the effect of if he punched him in the face, that's excessive force, and that's not in there. So, I mean, after the handcuffing. So I don't know how a jury would know. I mean, first of all, do you doubt that if, in fact, he was punched and hit as he says he was after he was in handcuffs, that would be excessive force? Well, Your Honor, I think that brings up a lot of responses. So let me see if I can answer that one first and then try to remember the other ones. The issue with whether or not he was punched or struck after he was in handcuffs, and I can't cite you any specific place in the record, but I think Judge Chesney felt uncomfortable with giving the instruction with respect to that kind of time frame because it may have limited Mr. Moore's theories of liability. That's not why I asked you that. But if he did that, if that was done, would that be excessive force? Not necessarily, because you can imagine situations where, and I think Sergeant Birch testified that when he initially got in contact with Mr. Moore, he was able to get one handcuff on, and as the struggle persisted, it took some time, 60 seconds or a minute, to get that other handcuff on. I don't know what the jury may not understand. What does it mean when the handcuffs are on? What about inserting a flashlight into his rectum? Is there any way that's not excessive force? I would agree that there's no way that's not excessive force. But how would you know that from this instruction? Well, okay. So I think the crux of Your Honor's problem is that, and a lot of this wording is patterned right off the 922 jury instruction. Except that you put two things together and you end up with a mess. Well, Judge Chesney was trying to find a way to put this in simple terms because as you start adding jury instructions, it can get more complicated. I agree. With respect to the flashlight incident, there is this kind of disconnect about the objective reasonableness problem. If the jury finds that the conduct happened, is it then being asked to also decide whether it's objectively reasonable or not? And that also, to some extent, purvey or is an issue with the handcuffing, although I think less so. But, Your Honor, she was trying to fashion jury instructions that were simple and straightforward and made sense to the jury. They're not simple. They're definitely not simple and straightforward. Incredible confusion. It is the analysis, though, for an excessive force, is you find there's a two-prong analysis. The first prong is that you find whether or not the conduct occurred. And then whether or not it's a violation depends on whether or not it was objectively reasonable. I agree. And Judge Jenkins found no reasonable jury would ever find that using the flashlight in that way is objectively reasonable. But, well, here's two things that I have in response to that. First, the defense never argued, not once, Your Honor. This was a he said, she said case on the flashlight. Defense never argued that, well, it may have happened, but it was objectively reasonable. That wasn't the issue that the jury was confronted with. It was a yes, it happened, or no, it didn't. There was no objectively reasonable argument. Number two, Mr. Moore had, he had the ability to make this argument that the jury instruction didn't preclude him from arguing that this, that this was wrong as a matter of law, that it was wrong, that it was objectively reasonable. It didn't, there wasn't an error in the instruction that was, that was wrong in any respect that foreclosed him from maintaining the theory of liability. Third, in order for their theory to, in order for their claim of error to be prejudicial, you have to assume that you have an unreasonable jury. This is why. Judge Jenkins determined that the use of the flashlight, if proven true, was wrong, a violation as a matter of law. In other words, no reasonable jury could find that. Kagan. But what they were told was that they have to prove that he used excessive force when he took the following actions. So that seems to not so much, not really put in question whether they took the following actions, but to say when, was taking the following action excessive force. That seems to be the question that was put to the jury. And by excessive force, they mean was it objectively reasonable or not. It may or may not have been excessive force. Right. But there was never any kind of issue presented to the jury about whether it happened and could still have been justified somehow. It was, you know, it was the conduct. Did it happen? Did it happen? And again, it gets back to the issue that for there to have been an error and for the jury to have made that mistake in interpreting the instructions or applying this part of the instructions, you have to assume that the jury was necessarily unreasonable. No. You have to assume that they took the instructions the way they were given. I mean, for example, in determining whether the defendant officer used excessive force in this case, consider all the circumstances, including the severity of the crime, whether they could say, oh, this was a severe crime. Whether Mr. Moore was actively resisting arrest. Yes, he was in the hospital. No, I'm sorry. Whether he was uncooperative and resistive at the hospital. Well, yes, he was. So now he has a severe crime and he was uncooperative and resistive. And so maybe the force wasn't excessive. It gets back to the very beginning of their argument where Judge Jenkins says, when Judge Jenkins says, as a matter of law, I find this to be a violation, he's still using the two-part analysis. He's still finding that the conduct happened, and he's saying that if it happened, it would be a violation. Was he uncooperative and resistive at the hospital in the standard jury instruction? No. I'm sorry? Whether Mr. Moore was uncooperative and resistive at the hospital was not in any standard jury instruction, right? I believe that was added. Sure. And so Judge Jenkins had no reason to know that that was going to be in the jury instruction when he was saying what everyone was saying. Well, I think his order said there's no set of circumstances, something to do with the fact that there's no set of circumstances where this could ever be okay. And I think everyone in this room would agree with that. We're assuming that in order for this error to have had any effect, that, you know, eight members or nine members of the jury would have had to think the opposite. And it's not more likely than not that that's the case. You know, there's a tension there. In order to establish that there was prejudicial error, you have to assume that this jury was unreasonable the way this was set up. No. That depends on the instructions. I mean, it gets circular. Whether they were unreasonable depends on what they were told they had to do. I agree, Your Honor, that I don't think anyone would deny that it is – it was the under any set of circumstances how they answered those questions for them to reach the decision that it was okay. No one would think that that was reasonable. No reasonable jury would find that. And so let me just move on to – Well, your time has expired. Do you want to take about 30 seconds to sum? Okay. The issue with counsel withdrawing at the last minute. Mr. Moore has no one to blame but himself for being in that situation. This case has dragged out for nearly eight years. Gibson Dunn was providing pro bono representation to him. According to the partner that came in during the motion to withdraw, he said they spent 2,000 hours working on this case for Mr. Moore for free. He knew before the judge granted the motion for withdrawal that he was not going to be able to get another attorney. And, you know, this was just another example of Mr. Moore's gamesmanship throughout this process. He'd also ask at about the same time for a request for continuance in order to get his dentures fixed. So this was just him gaming the system. And, again, he has no one else to thank or blame but himself for being in that situation. And for all those reasons, this Court should affirm the jury's verdict. Thank you. Thank you, Your Honors. Quickly, a couple of points. There is case law that establishes that the prejudice from the admission of the prior conviction is presumed, that the error is not harmless. Again, Simpson v. Thomas and the Powell v. Levitt case are both directly on point. Those are both non-criminal cases. They're both civil rights police excessive force cases. They are both cases where a stale prior conviction was admitted, and they are both cases where the Court reversed finding that inevitably a jury, when they hear that this is somebody who has a prior conviction that is really not probative of anything, is just a bad person that shouldn't be believed or is not deserving of other justice. So there is no doubt that there was prejudicial effect of the stale conviction in this case. With regard to the jury instructions, I agree with you, Judge Burrson. They're so confusing. And the problem here is that the jury was not told that all they needed to find was to make the factual determinations. That's what the jury is tasked to decide. Did this fact happen? After he was safely in handcuffs, was he beaten in the eyes and in the mouth? After he was at the hospital, was he sodomized by a flashlight? That's what the jury was asked. There was no question, as a matter of law, whether or not if those actions had occurred, as alleged, and the jury believed them, that that was an unreasonable use of force under the law and was excessive. And there is case law that says whether or not force is excessive or reasonable is a question of law, and that's the — I don't know how to pronounce it — the Diorle case cited at 1279 in our brief. Wasn't the question that you just posed the whole theory of the defense in front of the jury? I'm sorry, of the plaintiff in front of the jury. Was the question that we — that I just posed now? No. What we posed — That's what the jury had to decide. What occurred? The jury had to decide the factual circumstances of what occurred. But the jury was instructed that first they had to decide did any of these things happen, and if so, were they excessive, and then was it unreasonable based on these factors that didn't really have anything to do with what the jury was tasked to decide. So, for example, they were asked the severity of the crime. Well, again, his arrest was not an issue. The initial putting him in handcuffs, not an issue. At the defense counsel's request, that was all excluded, and the parties agreed pretrial that there was no claim that there was any unreasonable force prior to his being safely in handcuffs. Post-handcuffs, Judge Jenkins found in his summary judgment order that, again, no genuine dispute of material fact that he was not resisting arrest and was not attempting to flee and did not pose a threat to either officers or any other person after he was safely in custody. And, in fact, the defendant's own declarations supported that view. Well, Judge Jenkins didn't really make a finding. He said that was a material issue of fact to be decided by prior fact. Isn't that true? No, Your Honor. I disagree with that. He found at page — Can a judge make a finding of fact during summary judgment? The judge found that there was no genuine dispute or that this had not happened. He found that there was no genuine dispute of fact as to that point. And that's at page — And there was a genuine dispute as to whether this had happened. There was a genuine dispute as to what happened to Mr. Moore. What I'm saying is, is that Judge Jenkins found that after he was safely in handcuffs — I don't know why that matters, because the law of the case really doesn't have much application in this circumstance. But the larger question is simply whether the instruction as given was — would have allowed the jury to find that essentially that he — both the handcuffs were on and he was punched in the face. That was not excessive force. Right. And I believe that that is what the jury was instructed, that they were allowed to make that determination, and it was confusing for them. They probably did not know even what they were being asked to decide. And, you know, I agree as for the law of the case, regardless of whether or not that's applicable or not, there was no evidence in this case that after he was in handcuffs that there was any resisting of arrest, threat to the officers, or posing any threat to anybody at that point. So not only at the summary judgment phase, but at the trial, there was no dispute as to that fact. The only dispute was after he was in handcuffs and he was being escorted to the car to be taken to the hospital, whether at that point they beat — they beat him in the mouth and in the eyes. That was the question that the jury was being asked to decide. And the jury instructions threw all these other things at them, like was that excessive force, was that unreasonable, and gave them factors to consider that were just not relevant or not helpful for them to make those factual determinations. Thank you, counsel. I also want to thank you and your firm for your pro bono representation. Thank you. The case is, it's heard argued, to be submitted for decision.
judges: Alarcon, Thomas, Berzon